**Randolph L. HATORI, Plaintiff,**

v.

**Dale HAGA, Counselor, et al., Defendants.**

**Civ. No. 84–0868 ACK.**

United States District Court, D. Hawaii.

Nov. 17, 1989.

Randolph Hatori, Honolulu, Hawaii, pro se.

Frank Kim, Honolulu, Hawaii, for defendants.

## ORDER PARTIALLY ADOPTING AND PARTIALLY REJECTING MAGISTRATE'S REPORT AND RECOMMENDATION

KAY, District Judge.

This matter comes before the Court pursuant to Plaintiff's *pro se* 42 U.S.C. § 1983 civil rights action alleging that Defendants violated Plaintiff's procedural due process rights when Plaintiff was placed in administrative segregation from May 23, 1984 to October 25, 1984 without notice or hearing. Plaintiff further alleges that during the period of May 23, 1984 to August 7, 1984 (date Complaint filed) his administrative segregation was not reviewed.

On August 2, 1989, Magistrate Tokairan filed his Report and Recommendation proposing that this Court grant Defendants' Motion for Summary Judgment. The Magistrate concluded that Plaintiff's placement in administrative segregation without hearing or notice did not constitute a violation of his due process rights because administrative segregation does not inhere an interest protectable under the Due Process Clause of the United States Constitution.

In addition, the Magistrate concluded that (i) the suit against Defendants in their official capacities is barred by the Eleventh Amendment and Sovereign Immunity, and (ii) to the extent Defendants are sued in their individual capacities, they are protected by qualified immunity because there existed at the time of their actions no clearly established law holding their conduct unlawful.

At all times pertinent hereto, Plaintiff was an inmate incarcerated at the Oahu Community Correctional Center ("OCCC") and Defendants were employees of OCCC.

### Summary Judgment Standard

■ Summary Judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Supreme Court of the United States has declared that Summary Judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. The Ninth Circuit has fully adopted and implemented the *Celotex* rule:

[I]f the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then sum-

mary judgment is appropriate. *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *citing, Celotex,* 477 U.S. at 323 [106 S.Ct. at 2552].

There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

The Movant bears the initial burden of informing this Court of the basis for its motion and identifying those sections of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the Movant believes demonstrate the absence of a genuine issue of material fact. There is, however, no requirement that the Movant support its motion with affidavits or other evidence negating the nonmoving party's claims. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

In order to withstand a motion for summary judgment, therefore,

[T]he nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 [106 S.Ct. 2505, 2511, 91 L.Ed.2d 202] (1986).... [I]f the factual context makes the nonmoving party's claim *implausible,* the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *California Architectural,* 818 F.2d 1466, 1468 (emphasis in original), *citing, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 [106 S.Ct. 1348, 1356, 89 L.Ed.2d 538] (1986).

Rule 56(e) explicitly states that the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." It follows that the nonmoving party can with-

stand a properly supported motion for summary judgment only by establishing the existence of a proper jury question as to a genuine issue of material fact. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Although the movant has the burden of showing that there is no genuine issue of fact,

> [The nonmoving party] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.... [he] *must present affirmative evidence* in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256–57 [106 S.Ct. at 2514] (emphasis added).

■ Regarding "materiality," the substantive law determines which facts are material:

> Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510].

■ Regarding "genuine," the nonmoving party has met his burden if he has established evidence of a material fact such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. But where such evidence is merely colorable or is not significantly probative, summary judgment is properly granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

It is apparent that potential application of Rule 56 Summary Judgment has been substantially broadened. The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural,* 818 F.2d 1466, 1468. Moreover, the Supreme Court recently stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355.

The Supreme Court has outlined the proper form of judicial inquiry when considering the merits of a motion for summary judgment:

> [T]he judge must ask himself ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonable find for the [nonmoving party]. *Anderson,* 477 U.S. at 252 [106 S.Ct. at 2512].

As always, however, in evaluating the evidence submitted by both parties, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 630–31 (9th Cir.1987). For purposes of a motion for summary judgment, therefore, "[t]he evidence of the non-movant is to be believed." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

*Liberty Interest Requiring Due Process*

■ Plaintiff argues that his due process rights have been violated because (i) he was not noticed of the prison administrator's intent to administratively segregate him, (ii) he was not provided a hearing on the issue of whether he was properly segregated, and (iii) his segregation was not reviewed at least once every thirty days as suggested by the Hawaii Admin. Rules.

In reliance upon the Supreme Court decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), Defendants maintain that Plaintiff's placement in administrative segregation without hearing or notice does not constitute a violation of his due process rights because Plaintiff had no "liberty interest" in remaining in the general prison population which would invoke due process requirements. Defendants have misunderstood and misapplied *Hewitt.*

The Supreme Court in *Hewitt v. Helms* construed a Pennsylvania statute, Title 37 Pa.Code 95.104(b)(1) (1978), as having created a protected liberty interest entitled to

protection under the Due Process Clause of the United States Constitution:

> [W]e conclude in the light of the Pennsylvania statutes and regulations here in question ... respondent did acquire a protected liberty interest in remaining in the general prison population. *Hewitt*, 459 U.S. at 470–71 [103 S.Ct. at 871].

The Supreme Court based its finding of such a liberty interest upon two characteristics of the Pennsylvania statute (i) the use in that statute of mandatory language, requiring that certain procedures "shall," "will," or "must" be employed, and (ii) the nomination of specified substantive predicates to administrative segregation, *e.g.*, "the need for control," or "the threat of serious disturbance." *Hewitt*, 459 U.S. at 471–71, 103 S.Ct. at 871–72. The Court concluded:

> [W]e are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest. *Hewitt*, 459 U.S. at 472 [103 S.Ct. at 871].

The relevant Hawaii Administrative Rules (§§ 17–201–22 and 17–201–24) may not contain the clearly mandatory language found in the Pennsylvania statute. The term "should" is employed rather than "must" or "shall" when delineating the procedures to be followed when implementing administrative segregation. The word "should" is defined as:

> The past tense of shall; ordinarily implying duty or obligation; although usually no more than an obligation of propriety or expediency, or a moral obligation, thereby distinguishing it from "ought." It is not normally synonymous with "may," and although often interchangeable with the word "would," it does not ordinarily express certainty as "will" sometimes does. Black's Law Dictionary 1237 (5th ed. 1979).

Thus, one might fairly interpret the use of "should" in the Hawaii statute to inhere an obligation of some lesser degree than does the term "shall" in the Pennsylvania statute. This Court concludes that the

drafters of Hawaii Administrative Rules §§ 17–201–22 and 17–201–24 fully expected that their guidelines would, should, and shall be implemented and followed. The Hawaii Rules, moreover, do premise administrative segregation of prisoners upon "specified substantive predicates." For example, when an inmate has committed or threatens to commit a serious infraction, or when the inmate is a threat to life, limb, the community, or the security of the facility, administrative segregation is appropriate. Moreover, pursuant to Title 17, Administrative Rules of the Corrections Division, § 17–201–24, Plaintiff's administrative segregation should be reviewed "at least once every thirty days."

In a decision handed down only two months after *Hewitt*, the Supreme Court stated that "specified substantive predicates" will establish a liberty interest even in the absence of mandatory language:

> [A] State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show "that particularized standards or criteria guide the State's decision makers." *Olim v. Wakinekona*, 461 U.S. 238, 249 [103 S.Ct. 1741, 1747, 75 L.Ed.2d 813] (1983).

In *Olim v. Wakinekona*, 461 U.S. at 249, 103 S.Ct. at 1747, the Supreme Court held that a Hawaii prison regulation that permitted the prison administrator to transfer prisoners from one prison facility to another placed no substantive limitations on official discretion and therefore did not create a liberty interest entitled to protection under the Due Process Clause. The Court held:

> If the decision maker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," the State has not created a constitutionally protected liberty interest. *Id.* at 249, 103 S.Ct. at 1747.

Hawaii Administrative Rules §§ 17–201–22 and 17–201–24, governing administrative segregation, do contain "specified substantive predicates" and are more closely

aligned therefore with Pennsylvania Code 95.104(b)(1) than they are with the Hawaii Rules governing transfer of inmates between prisons which the Supreme Court found "contain no standards governing the Administrator's exercise of his discretion." *Olim,* 461 U.S. at 243, 103 S.Ct. at 1744.

It is evident that particularized, objective, and defined standards or criteria have been provided by the State of Hawaii to guide prison officials when deciding whether to impose administrative segregation. This Court finds, therefore, that under the rule as delineated by the United States Supreme Court in *Hewitt* and *Olim,* Hawaii Administrative Rules §§ 17–201–22 and 17–201–24 do create a liberty interest entitled to protection under the Due Process Clause of the United States Constitution.

■ The "touchstone of due process," according to the Supreme Court of the United States, is "protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Hawaii may not arbitrarily place a prisoner in administrative segregation. *See Hughes v. Rowe,* 449 U.S. 5, 9–13, 101 S.Ct. 173, 175–177, 66 L.Ed.2d 163 (1980). It is manifest, however, that

> [O]ne cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison. *Wolff v. McDonnell,* 418 U.S. at 560 [94 S.Ct. at 2976].

> "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547,

99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

Regarding what procedures will satisfy the procedural requirements of the Due Process Clause within the prison setting, the Supreme Court stated in *Hewitt* that

> [A]n informal, nonadversary evidentiary review is sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied. This informal procedure permits a reasonably accurate assessment of probable ·cause to believe that misconduct occurred .... *Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874.

It follows that in the State of Hawaii due process requires (i) at the time of segregation, the prisoner must receive some notice of the charges against him, (ii) within a reasonable time after segregation, the prisoner must be afforded an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation, and (iii) the prison administrator, within a reasonable time after the prisoner is segregated,[1] and at least once every thirty days thereafter, must review the decision to adminis-

1. The language quoted from the Supreme Court's decision in *Hewitt* may be misleading regarding the timing of the required review. While the quoted language speaks in terms of a review of the decision "to confine," and the prisoner's opportunity to present his views regarding "whether to transfer him," it is clear from the decision that the required review and

opportunity to be heard need only be provided within a reasonable time "after" transfer to administrative segregation and not before. Thus, the *Hewitt* Court upheld as Constitutionally proper, availability of review by a Hearing Committee "[o]nly five days after his [the prisoner's] transfer to administrative segregation ...." *Hewitt,* 459 U.S. at 477, 103 S.Ct. at 874.

tratively segregate the prisoner and determine at that review that administrative segregation is appropriate pursuant to the guidelines promulgated under Hawaii Administrative Rules §§ 17–201–22 and 17–201–24.

### Sovereign Immunity

■ Having decided that Hawaii Administrative Rules §§ 17–201–22 and 17–201–24 do create a liberty interest entitled to protection under the Due Process Clause of the United States Constitution, it still remains to be determined whether Defendants are immune from liability for their actions.

■ The Eleventh Amendment bars a citizen of one state from suing another state in federal court without the latter's consent. In addition, the Eleventh Amendment has been interpreted to prevent suits by citizens of the state being sued. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Hawaii has neither waived its Eleventh Amendment immunity nor has Congress overridden that immunity. It follows that the State of Hawaii enjoys sovereign immunity from Plaintiff's suit under Title 42 U.S.C. § 1983.

■ Where claims are against state officials acting in their official capacities, such state officials are generally protected by the same sovereign immunity as is the state. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Where state officials are acting pursuant to an established governmental policy, the relevant government agency generally is responsible for the actions of its officials. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). A complaint challenging conditions at a state prison, moreover, is usually viewed as a suit against the prison officials in their official capacities. *Hutto v. Finney,* 437 U.S. 678, 699, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978). Suits against state officials in their official capacities generally are recognized by the United States Supreme Court as merely an alternate method of pleading against the entity for which the officer is an agent. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

■ Nevertheless, the Eleventh Amendment does not bar suits against state officials acting pursuant to state law when, as in the instant case, it is alleged that such actions constitute a violation of Plaintiff's Constitutional rights. Where the official is alleged to have enforced an unconstitutional state law or policy, such policy is void and the state official is held to be "stripped of his official or representative character."

> It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. If the act which the state [official] seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. *Ex parte Young,* 209 U.S. 123, 159–60 [28 S.Ct. 441, 453–54, 52 L.Ed. 714] (1908); *see also, Scheuer v. Rhodes,* 416 U.S. 232 [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974).

■ Moreover, while the Eleventh Amendment usually bars private suits against state officials that require a federal court to award money damages which must be paid from the state treasury for past conduct, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (suit against state official for retroactive payment of wrongfully withheld welfare benefits), the Eleventh Amendment does not bar suits requiring prospective payment of state funds. The rationale for this distinction is that prospective relief will not affect previously allocated state funds. *Id.*

■ This Court finds, therefore, that Plaintiff's suit is not barred by the Elev-

enth Amendment and the doctrine of sovereign immunity because the United States Supreme Court established in *Ex parte Young* that a state official is stripped of his official or representative character when his actions, although in concert with state law or policy, are Constitutionally violative. Plaintiff's 42 U.S.C. § 1983 action is therefore deemed to be against Defendants in their individual capacities.

### Qualified Immunity

▮▮▮ The Supreme Court has recognized absolute immunity for certain federal officials whose special functions or Constitutional status requires complete protection from liability. Examples of such officials include legislators, judges, and certain officials of the Executive Branch including prosecutors, executive officers engaged in adjudicative functions, and the President of the United States. Most executive officials, however, enjoy only a qualified immunity from private suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The rationale for the distinction is that higher officials require greater protection from liability than officials with less complex and discretionary responsibilities. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

▮▮ The doctrine of qualified immunity represents a balancing of competing interests. On the one hand is the importance of providing a damages remedy to persons whose Constitutional rights have been violated. On the other hand are the dual needs for protection of public officials who are required to exercise discretion, as well as the related public interest in encouraging forthright exercise of official authority. *Harlow* 457 U.S. at 807, 102 S.Ct. at 2732.

Resolution of this balancing problem has resulted in the following rule articulated by the Supreme Court in *Harlow v. Fitzgerald:*

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

Relevant to the instant action, the Supreme Court has established that qualified immunity does extend to state prison officials. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Qualified immunity, moreover, is properly considered pursuant to a motion for summary judgment. Thus, where current law was not clearly established at the time of the alleged violation, a judge may properly award summary judgment in favor of the government official.

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

The question of whether administrative segregation inheres due process rights was not settled in Hawaii at the time that Plaintiff's due process rights were violated. The Supreme Court has established that before a public official may be held liable for violation of another's Constitutional rights, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

There has been no published judicial decision specifically placing officials of Hawaii state prisons on notice that the process of administrative segregation invokes the Due Process protections of the United States Constitution. The word "should," appearing in the Hawaii regulations, therefore, could reasonably have been interpreted by a prison official to have constituted only a recommendation of acceptable procedures and not to have explicitly required the procedures therein delineated. Accordingly,

this Court does not find that a reasonable prison official would have understood that he was violating Plaintiff's Due Process rights. Defendants, therefore, are entitled to the limited immunity established by the Supreme Court in *Harlow v. Fitzgerald.*

It is the holding of this Court that (i) the procedure of administrative segregation in Hawaii prisons does invoke the Due Process Clause of the United States Constitution, thus prison officials must provide appropriate due process safeguards, as delineated herein, attendant to placing a prisoner in administrative segregation, (ii) Plaintiff's suit is not barred by the Eleventh Amendment and the doctrine of sovereign immunity because a state official is stripped of his official or representative character when his actions, although in concert with state law or policy, are Constitutionally violative. Plaintiff's 42 U.S.C. § 1983 action is therefore deemed to be against Defendants in their individual capacities, and (iii) because the law at the time Plaintiff was administratively segregated was not clearly established, Defendants could not reasonably be expected to have anticipated subsequent legal developments, nor could they fairly be said to have known that the law forbade administrative segregation without due process. Accordingly, this Court does not find that a reasonable prison official would have understood that he was violating Plaintiff's Due Process rights. Defendants, therefore, are entitled to the limited immunity established by the Supreme Court in *Harlow v. Fitzgerald.*

In accordance with the preceding, there being no genuine issues of material fact, and in the interests of justice, Defendant's Motion for Summary Judgment is hereby granted, not because administrative segregation does not invoke the Due Process Clause of the United States Constitution, on the contrary, this Court holds that the Due Process Clause is invoked; and not because Defendants are immune from 42 U.S.C. § 1983 liability under the Eleventh Amendment and the doctrine of sovereign immunity, as this Court holds that Defendants are not immune from § 1983 immunity under the Eleventh Amendment where

they are found to have violated an individual's Constitutional rights; but because the Defendants, being sued in their individual capacities, could not reasonably be expected to have adhered to a legal requirement that previously had not been clearly established, they are immune from liability under the instant action.