**Sabil M. MUJAHID aka Terry Smith, Plaintiff,**

v.

**Howard APAO, Cheryl Zembik, and Tera Harper, Defendants.**

**Civ. No. 91–00213 HMF.**

United States District Court,
D. Hawaii.

June 3, 1992.

Sabil M. Mujahid, pro se.

Warren Price, III, Atty. Gen., State of Hawaii, Thomas D. Farrell, Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

## ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

FONG, District Judge.

### INTRODUCTION

On April 7, 1992, the magistrate judge filed a Report and Recommendation that defendants' motion for summary judgment be granted and the complaint be dismissed.

On April 15, 1992, plaintiff Mujahid filed objections to the Report and Recommendation. On April 17, 1992, defendants also filed objections to the Report and Recommendation. On May 1, 1992, plaintiff Mujahid filed a "reply" memorandum to defendants' objections.

## BACKGROUND

Plaintiff Mujahid, an inmate at the Halawa High Security Facility ("Halawa"), filed this action under 42 U.S.C. § 1983 alleging, *inter alia*, that defendants denied him due process of law in violation of the Fourteenth Amendment, and seeking declaratory, injunctive, and monetary relief.

Mujahid's due process claim arises from an incident that occurred on January 20, 1991, on which date Mujahid was being held in the Special Holding Unit at Halawa. A nurse assigned to the facility, identified only as "nurse Priscilla," was in the process of dispensing medicine to each prisoner confined within the unit cell block when a verbal altercation erupted between Mujahid and nurse Priscilla over the medication being dispensed. The entire incident was witnessed by Adult Corrections Officer (ACO) Price, who was observing from the control "box" within the Special Holding Unit. Price filed a report of the incident, which, after further investigation by ACO Smith, was subsequently referred to an Adjustment Committee for disciplinary action, if warranted.

In his filed report, Price wrote that Mujahid verbally abused and sexually propositioned nurse Priscilla, in violation of Hawaii Administrative Rules 17–201–8(2) and 17–201–9(5). Price further reported that Mujahid refused to obey his order to cease the verbal harassment in violation of Hawaii Administrative Rule 17–201–8(11).

The Adjustment Committee assigned to review the incident consisted of defendants Howard Apao, Cheryl Zembik, and Tera Harper. The Committee met for a hearing on March 6, 1991, wherein Mujahid represented himself and pled not guilty to the charges lodged against him. Both Price and Mujahid testified as to the events that transpired on January 20, 1991, and Mujahid was given the opportunity to review Price's report and to cross-examine Price. After considering the evidence presented at the hearing, the Committee found Mujahid guilty of intentional misconduct and ordered plaintiff to serve fourteen (14) days in disciplinary segregation. The Committee explained that its decision was based "on written reports and testimonies presented at the [March 6, 1991] hearing."

In this civil action, Mujahid contends that defendants violated his due process rights by failing to adequately justify its decision. Specifically, Mujahid asserts that defendants never provided him with written reasons for the decision or a summary of the evidence relied upon therein. Although Mujahid invokes the First, Eighth, and Fourteenth Amendments in his complaint, it appears that he relies solely upon the Due Process Clause of the Fourteenth Amendment.

On December 18, 1991, defendants moved for judgment on the pleadings or, in the alternative, for summary judgment. On April 1, 1992, plaintiff Mujahid filed a memorandum in opposition. As indicated above, the Magistrate Judge filed a Report and Recommendation on April 7, 1992, recommending that defendants' motion be granted and the complaint dismissed.

## DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,*

809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.*, 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

■■■ If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Prod., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.* .

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.*, 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

## II. ANALYSIS

### A. Liberty Interest and Due Process

Plaintiff Mujahid contends that the State of Hawaii has created a liberty interest in remaining free of disciplinary segregation. Mujahid relies upon the factors that (1) the State of Hawaii reviews his disciplinary record in determining whether he should be eligible for parole and (2) the State of Hawaii has promulgated regulations that set forth specific procedures that an Adjustment Committee must observe in considering charges of misconduct.

#### 1. Parole

■■■ The court opts not to adopt the magistrate judge's recommendation that the parole system in Hawaii creates a "liberty interest" that requires a certain level of procedural safeguards. In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court wrote that the possibility of parole, without more, provides no more than a mere hope that the benefit of parole will be obtained. A mere hope, the court concluded, is not protected by the Due Process Clause. Nevertheless, the Court in *Greenholtz* found that Nebraska's statutory language creates a protectible expectation of parole because it created a presumption of release once designated findings were made. 442 U.S. at 13, 99 S.Ct. at 2106–07 (citing *Wolff v. McDonnell*, 418 U.S. 539,

94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)) [1]; *see also Connecticut Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (mandatory language must create presumption of release in order for liberty interest to attach).

A proper application of *Greenholtz* requires the court to conclude that the Hawaii parole statute does not create a liberty interest protected by the Due Process Clause. Unlike the statutes at issue in *Greenholtz, Wolff,* and *Connecticut Board,* the Hawaii statute does not mandate that an inmate be released when *or* unless certain predicate findings are made. Instead, the Hawaii parole statute states that a grant of parole is entirely permissive.

> Paroles *may* be granted by the Hawaii Paroling Authority at any time after the prisoner has served the minimum term of imprisonment fixed according to law; ...

Haw.Rev.Stat. § 353–68(a) (Michie 1988). The only compulsory language in the Hawaii statute is written in the negative, which mitigates against a finding that Hawaii inmates have a reasonable expectation of a liberty interest.

> *No parole shall be granted* unless it appears to the Hawaii Paroling Authority that there is a reasonable probability that the prisoner concerned will live and remain at liberty without violating the law and that the prisoner's release is not incompatible with the welfare and safety of society.

Haw.Rev.Stat. § 353–69 (Michie 1988) (emphasis added).

Accordingly, the court finds that Mujahid did not have a liberty interest in parole that required the Adjustment Committee to afford him a certain level of due process.

### 2. Administrative Regulations

■ The court, however, does adopt the magistrate judge's recommendation that the administrative rules of procedure enacted by the State of Hawaii for disciplinary proceedings create a liberty interest for which Mujahid is entitled to procedural safeguards. It is well settled law that mandatory procedures create a liberty interest where "substantive limitations" are placed on official discretion. *See Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). There is no question that Hawaii's administrative regulations governing the conduct of a disciplinary hearing are mandatory. Hawaii Administrative Rule § 17–201–16(a) states that the inmate *shall* receive prior notice of adjustment committee hearings. Hawaii Administrative Rule § 17–201–16(b) states that the inmate *shall* be served with written notice of the time and place of the hearing, the specific charges, and a brief notation of the facts. Hawaii Administrative Rule § 17–201–18(c) states that the inmate *shall* be given a brief written summary of the committee's findings which shall be entered in the case file.

The court recognizes that these mandatory procedures do not, in and of themselves, create a liberty interest. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983) ("The adoption of such procedural guidelines [for administrative segregation], without more, suggests that it is these restrictions alone, and not those federal courts might also impose under the Fourteenth Amendment, that the State [of Pennsylvania] chose to require."); *Olim v. Wakinekona,* 461 U.S. at 251, 103 S.Ct. at 1748 ("Process is not an end in itself"); *Toussaint v. McCarthy,* 801 F.2d 1080, 1097–98 (9th Cir.1991) (holding that state procedural requirements are entitled to due process protections only when combined with "specific substantive predicates for action"), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987);

---

**1.** In *Wolff,* the Supreme Court held that the Due Process Clause protected Nebraska inmates from the arbitrary loss of the statutory right to good-time credits which served to reduce an inmate's term of imprisonment. While the State of Hawaii does not have a system of good-time credits, the Hawaii Paroling Authority does consider the factual findings of Adjustment

Committees with respect to incidents of misconduct in determining an inmate's eligibility for parole. However, the *Greenholtz* Court suggested that a paroling authority's broad discretion to review an inmate's records is fully adequate to "cure" any factual inaccuracies. 442 U.S. at 15 n. 7, 99 S.Ct. at 2108 n. 7.

*Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir.1991) (holding that decisions of administrative segregation left to broad discretion of prison officials not entitled to procedural safeguards).

Yet an Adjustment Committee's discretion to impose sanctions is predicated upon a factual finding of misconduct. In this case, Mujahid was sentenced to serve fourteen (14) days in the Special Holding Unit because the Adjustment Committee adjudged him guilty of the charges lodged against him. Indeed, defendants recognize this fact when, in their moving papers, defendants write that Mujahid was found guilty of the charges and "sentenced" to fourteen (14) days in the Special Holding Unit. Without question, the Adjustment Committee could not have imposed the sanction or punishment of disciplinary segregation absent a factual finding of misconduct. Hawaii Administrative Rule § 17–201–19(a). An Adjustment Committee does not have the discretion to impose sanctions wantonly; instead, its actions must be predicated on substantive charges. As in *Hewitt* and *Toussaint*, the State of Hawaii's procedural requirements combined with substantive restrictions on administrative action created a liberty interest that is subject to due process protections. *See also Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (*Thompson*).

In response, defendants argue that the Adjustment Committee has broad discretion to impose "any" sanction it deems appropriate; and, therefore, the procedures are not linked to a substantive predicate or limitation. *Thompson*, 109 S.Ct. at 1910. Defendants, however, misread *Thompson* for the proposition that a particular punishment must be pre-ordained in order to qualify as a substantive predicate that would limit an administrator's discretion. The misreading is fatal. The Court in *Thomp-*

*son* explicitly cited, as an example of a sufficient predicate, a procedure that provided "that administrative segregation will not occur absent specified substantive predicates." 109 S.Ct. at 1910 (quoting *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 872). Although the Adjustment Committee's discretion is not bounded by a collection of "sentencing guidelines," it cannot sentence in the first instance until it adjudges an inmate guilty of misconduct. Punishment is predicated upon guilt.[2]

Accordingly, the court concludes that Mujahid had a liberty interest at stake in the March 6, 1991 hearing held before the Adjustment Committee on the charges of misconduct. This conclusion is entirely consistent with several unpublished orders from this district. *See, e.g., Sims v. Falk*, No. 88–00348 DAE at 16 n. 11 (D.Haw. Jan. 3, 1989) (order adopting in part and rejecting in part magistrate's report and recommendation); *Aiello v. Shimoda*, No. 87–00224 ACK (D.Haw. Apr. 3, 1987) (order denying petition to proceed in forma pauperis and dismissing petitioner's complaint).

**B.** *Adequacy of Process*

█ The inquiry, however, does not end here. In order to determine whether Mujahid was deprived of liberty without due process, the court, at the outset, must determine what process Mujahid was due.

The court does not look to the Hawaii Administrative Rules for guidance. In *Toussaint*, the court, after having determined that the state regulations created a liberty interest, did not refer to these regulations for guidance as to how that interest was to be constitutionally protected. Instead, the *Toussaint* court cited the maxim that due process is "flexible and calls for such procedural protections as the particular situation demands." 801 F.2d at 1098–99 (quoting *Greenholtz*, 442 U.S. at 12, 99 S.Ct. at 2106). The *Toussaint* court then

---

**2.** Relying on the Ninth Circuit's opinion in *Grayson*, defendants also argue that the placement in disciplinary segregation does not implicate a liberty interest. Defendants overread *Grayson*. The court in *Grayson* held that administrative decisions that are firmly committed to the discretion of prison administrators are not conditioned by state procedural requirements. By contrast, Mujahid was not placed in disciplinary segregation by an administrative decision that was wholly discretionary but, again, by a decision that was predicated upon a finding that Mujahid engaged in misconduct.

reviewed the Supreme Court's pronouncements on the extent of procedural safeguards required before an inmate could be deprived of his liberty interest.

In *Wolff,* the Supreme Court held that, before a state may withdraw sentence credits that an inmate has already acquired, it must afford the inmate facing misconduct charges with a formal hearing, 24 hours' advance notice of the charges against him, the right to call witnesses and present documentary evidence, and a written statement explaining the basis of the tribunal's decision. 418 U.S. at 563–72, 94 S.Ct. at 2978–82. The Court reasoned that this quantum of process was required because the misconduct charges against the inmate, as upheld, *directly* affected the term of the inmate's imprisonment and because the hearing was essentially factual.

In *Hewitt,* the Supreme Court set forth the procedures that are required before an inmate can be placed in disciplinary or administrative segregation when such confinement implicates a liberty interest. As Justice Rehnquist, writing for the Court, instructed:

> We think an informal, nonadversary evidentiary review is sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.

459 U.S. at 476, 103 S.Ct. at 874. This court recognizes that the Pennsylvania prison officials never made a final determination as to whether the inmate was guilty of the charges of misconduct.

Mujahid's case falls squarely between *Wolff* and *Hewitt.* The Adjustment Committee made an objective determination that Mujahid committed the alleged offense yet also made a subjective determination that administrative segregation was an appropriate penalty. *See Toussaint,* 801 F.2d at 1100 ("explaining" that *Wolff* procedures are justified when factual findings are required and that *Hewitt* procedures are justified when administrative decisions as to appropriate unit of confinement are required).

In deciding which standard of procedure to apply, the court compares the consequences of the factual finding in *Wolff* to the consequences of the factual finding in Mujahid's case. In *Wolff,* the judgment of misconduct had a direct effect upon the inmate's term of imprisonment whereas in Mujahid's case the judgment of misconduct will have only an incidental effect upon his term of imprisonment, depending on the weight the Hawaii Paroling Authority affords the judgment. Furthermore, Mujahid's adjudged guilt was only one factor, albeit predicate, in the Adjustment Committee's discretionary decision as to an appropriate sanction. Accordingly, the court concludes that Mujahid was entitled only to those procedures articulated in *Hewitt* because the ultimate sanction—disciplinary segregation—was discretionary and will not necessarily affect his term of imprisonment.

The court finds, however, that the procedures afforded Mujahid met even the more rigorous requirements of *Wolff.* First, Mujahid received a notice of hearing with an attached copy of ACO Price's report detailing the charges against him. Mujahid does not dispute receipt. Second, at the March 6, 1991 hearing, Mujahid was given the opportunity to represent himself, to testify, and to cross-examine Price. Third, Mujahid received a written statement explaining the basis of the Adjustment Committee's verdict. In the statement, the Committee explained that it had based its "decision on written reports and testimonies presented at the hearing." In order to reach its decision, the Adjustment Committee had to

determine whether Mujahid's testimony or Price's testimony, including his report, was more credible as to the events occurring on February 20, 1991.

■ Neither the Supreme Court nor the Ninth Circuit has established any standard for how detailed the written statements must be. The court, therefore, looks to other federal courts for guidance on the appropriate standard. The Seventh Circuit, in a line of cases culminating in *Redding v. Fairman*, 717 F.2d 1105 (1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984), has required extremely detailed statements of an Adjustment Committee's decision, including a complete explanation of how the committee concluded that one witness was more credible than another. *Redding*, 717 F.2d at 1115 (citing *Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir.1982)); *see also King v. Wells*, 760 F.2d 89, 93–94 (6th Cir.1985) (each item of evidence must be included in the written statement unless safety concerns dictate otherwise). It is less than certain that most federal district courts, for example, in suppression hearings conducted pursuant to the Fourth Amendment, consistently meet this standard for detail.

The court is not persuaded that the *Redding* standard is required by *Wolff*, and certainly not by *Hewitt*. Instead, the court relies upon the Eighth Circuit standard articulated in *Brown v. Frey*, 807 F.2d 1407 (8th Cir.1986). The court in *Brown*, after expressly rejecting the requirements for specificity imposed by the Sixth and Seventh Circuits, held that the spirit of *Wolff* is satisfied if the written statement, even though sparse in content, is "sufficient to inform [the inmate] of the evidence relied upon by the fact finders in reaching their decision to take disciplinary action." *Brown*, 807 F.2d at 1412 (quoting *Jensen v. Satran*, 688 F.2d 76, 78 (8th Cir.1982), *cert. denied*, 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983)). The *Brown* court concluded that a brief statement indicating that the committee relied upon the conduct violation report as written and the prison rules was constitutionally adequate. As the court reasoned:

> The purpose of a written statement is not to reconstruct in a technical or detailed fashion the incident, as the board concluded it happened, that led to the disciplinary action. Instead, the purpose of the written statement is to require that the disciplinary board make reference to the evidence it relied on and the reasons for the disciplinary action. This forces the disciplinary board to commit itself, contemporaneously with its decision, to certain evidence and reasons, and thus guarantees that the inmate is not placed at a "severe disadvantage" by being forced to explain the incident or seek redress from unconstitutional acts based on a board's explanation that it patched together after the inmate has forwarded his claim. In this respect, the distinction between a written statement that incorporates in a report by reference and one that repeats statements from the report is inconsequential. In both cases, the board has committed itself to certain evidence, and a review based on established facts is available.

807 F.2d at 1414.

■ In Mujahid's case, the Adjustment Committee, in finding Mujahid guilty of misconduct, wrote that it had relied upon the "written reports and the testimonies," which were capable of sustaining only one of two conclusions—either Mujahid made the statements to nurse Priscilla or Mujahid did not make the statements to nurse Priscilla. As ACO Price recounted in his written report:

> Inmate Smith, while being medicated by nurse Priscilla, got into a verbal dispute about medication that he felt was due to him. After being denied by nurse Priscilla, inmate Smith started back to his cell. While walking back, inmate Smith said "Priscilla, you fucken cunt," then he stepped into his cell.
>
> As medication continued for other inmates in the unit, inmate Terry Smith again started to verbally abuse nurse Priscilla by saying words like "Priscilla, you fucken slut. I hope you choke on his black dick. At one point inmate Smith said "Priscilla, come in my cell and suck my dick."
>
> I, ACO Price, over the intercom, warned inmate Smith to be quiet but inmate continued his verbal attack.

After repeated warnings to inmate Smith to keep quiet, I, ACO Price, then gave inmate Smith a direct order to stop the harassment and to shut his mouth or he would receive a write up.

In reply inmate Smith said "she's just a slut anyways" and that the write up means nothing to him. End of Story. Therefore, I believe that inmate Terry Smith is in violation of rule 17–201–8(2) making sexual proposals or threats to another and rule 17–201–9(5) using abusive or obscene language to a staff member and 17–201–8(11) refusing to obey an order of any staff member.

The court finds that ACO Price's report provided inmate Smith with sufficient notice of the charges against him, prior to the March 6, 1991 hearing, and sufficient notice of the basis for the Adjustment Committee's decision. There can be no uncertainty or ambiguity as to what evidence in the record that the Adjustment Committee relied upon in reaching its decision.

■ Accordingly, the court finds that Mujahid was not denied the process that was required under the circumstances of the March 6, 1991 disciplinary hearing.[3] For the foregoing reasons, the court ADOPTS the magistrate judge's report and recommendation, GRANTS defendants' motion for summary judgment, and DISMISSES plaintiff Mujahid's complaint.[4]

IT IS SO ORDERED.

3. Although Mujahid references the First and Eighth Amendments in his complaint, there are no facts alleged in the complaint or subsequent memoranda filed with the court that would support a cause of action under these constitutional provisions. From the outset of the litigation, Mujahid has claimed only that the March 6, 1991 hearing before the Adjustment Committee did not comport with the requirements of the Due Process Clause. With the instant motion, defendants have moved for summary judgment as to all causes of action pled in the complaint. Although defendants have not specifically addressed themselves to the First and Eighth Amendment claims, Mujahid's failure to respond to the motion by alleging facts to support the constitutional claims requires the court to dismiss them.

Nevertheless, the court adopts the magistrate judge's recommendation that these claims be dismissed on substantive grounds. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) ("A prison inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penalogical objectives of the corrections system."). Mujahid's verbal conduct, if it occurred as the Adjustment Committee found, interfered with the order and discipline of the prison facility. Furthermore, there is no evidence that Mujahid's placement in the Special Holding Unit constitutes cruel and unusual punishment. The uncontroverted evidence establishes that Mujahid was placed in a windowed cell, granted five hours of exercise per week, afforded time in the law library, provided with mail and writing material, and allowed limited visiting privileges.

4. In their objections to the magistrate judge's recommendations, defendants also demand that the court address the issue of qualified immunity. Any ruling by the court on the issue of qualified immunity would be advisory because the court has already found that defendants' actions fully comported with the demands of due process. Accordingly, the court adopts the magistrate judge's recommendation that it is unnecessary to consider the defense of qualified immunity.

The court nevertheless notes that the degree of procedural safeguards that an Adjustment Committee must afford an inmate in order to protect the liberty interest was not clearly established as matter of law as of March 6, 1991. *See generally Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The court further notes, however, that, as of March 6, 1991, it was clearly established law in this district that the Hawaii Administrative Regulations governing the conduct of Adjustment Committee hearings created a liberty interest protected by the Due Process Clause.