JOHN P. WILDER, Plaintiff-Appellant, *v.* HARRY TANOUYE, Unit Team Manager, TOM BROWDER, Case Worker, DALE HAGA, Case Worker, HOLLIS MAXSON, Unit Team Manager, ERIC PENAROSA, Program Control Administrator, FRANKLIN Y.K. SUNN, in his capacity as Director of the Department of Social Services and Housing, and the STATE OF HAWAII, Defendants-Appellees

NO. 12167

(CIVIL NO. 84-0573)

MARCH 17, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

Plaintiff-appellant John P. Wilder (Wilder), a prison inmate, appeals from the summary judgment in favor of defendants-appellees (Defendants). Wilder contends that because the record discloses serious procedural errors and genuine issues of material fact, the lower court erred in granting the summary judgment. We affirm.

### FACTS

On September 10, 1984, while incarcerated in the Oahu Community Correctional Center (OCCC), Wilder filed a pro se com-

plaint against four OCCC employees, namely, unit team managers Harry Tanouye (Tanouye) and Hollis Maxson (Maxson) and case workers Tom Browder (Browder) and Dale Haga (Haga). The complaint alleged claims grounded on constitutional torts.

On September 17, 1985, the lower court granted Defendants' motion to dismiss which had been filed on November 1, 1984. Wilder appealed the dismissal. Although characterizing the complaint as "lengthy, prolix and confusing," the supreme court reversed the dismissal and remanded the case. *Wilder v. Tanouye,* No. 10910 (Haw. July 31, 1986) (mem.).

On November 14, 1986, Wilder filed an amended complaint adding three other defendants, namely, Eric Penarosa (Penarosa), OCCC program control administrator; Franklin Y.K. Sunn, director of the Department of Social Services and Housing (Director); and the State of Hawaii (State). Tanouye, Maxson, Browder, Haga, Penarosa, the Director, and the State are collectively referred to as Defendants in this opinion. The amended complaint alleged that Tanouye, Maxson, Browder, Haga, and Penarosa "acting within the scope and in the course of their employment" violated Wilder's "right to due process of law guaranteed to him by the Constitution of the State of Hawaii"[1] by (1) placing and retaining Wilder in "administrative segregation for an indefinite period of time" and (2) enforcing against Wilder "rules, regulations, policies, procedures, memos and directives" which had not been adopted pursuant to law. Record at 249, 252. The complaint also alleged that the Director and the State were liable for negligently hiring and supervising the named OCCC employees and also under "the doctrine of *respondeat superior." Id.* at 254. Wilder sought a declaratory judgment and damages, both compensatory and punitive.

On November 26, 1986, Defendants filed a motion for summary judgment. Prior to the filing of the motion, Defendants obtained an ex parte order dated November 21, 1986, which stated:

> The hearing on Defendants' Motion for Summary Judgment is suspended. The Court will rule on Defendants' motion

---

[1] Art. I, § 5 of the Hawaii Constitution provides in relevant part:

No person shall be deprived of life, liberty or property without due process of law[.]

without oral hearing and based solely upon the records, files and written arguments of the parties.

Parties may submit additional memoranda or evidence in the form of affidavit or other writing within thirty (30) days of the date of this order.

*Id.* at 264.

On December 9, 1986, Wilder filed a motion for an extension of time to January 9, 1987, to respond to Defendants' motion for summary judgment. On December 31, 1986, Wilder filed a "motion for relief" from the November 21, 1986 ex parte order denying oral argument on Defendants' motion for summary judgment. On January 8, 1987, Wilder requested a second extension of time to February 8, 1987, to respond to the summary judgment motion. On February 4, 1987, Wilder filed his memorandum of law, affidavit, and exhibits in opposition to the motion for summary judgment.

No hearing was held on Wilder's December 31, 1986 "motion for relief" or on Defendants' motion for summary judgment. On April 7, 1987, the lower court entered its order denying Wilder's December 31, 1986 "motion for relief." On the same day the court also filed its "Order Granting Defendants' Motion for Summary Judgment." Wilder's timely appeal followed.

## ISSUES ON APPEAL

The issues raised on appeal and our answers are:

I. Whether the lower court erred in granting Defendants' motion for summary judgment without giving Wilder an opportunity to be heard orally. No.

II. Whether the lower court erred in ruling on the summary judgment motion without granting Wilder's request for additional time to complete discovery. No.

III. Whether summary judgment was improperly granted because there were genuine issues of material fact and Defendants were not entitled to a judgment as a matter of law regarding Wilder's claims arising from (A) placing and retaining him in administrative segregation and (B) enforcing against him "rules, regula-

tions, policies, procedures, memos and directives" which had not been adopted pursuant to law. No as to both claims.

## I.

Wilder contends on appeal that the lower court reversibly erred in granting a summary judgment in Defendants' favor without giving him "an opportunity to be heard orally[.]" In support of this contention Wilder cites *Jensen v. Pratt,* 53 Haw. 201, 491 P.2d 547 (1971), *Clark v. Civil Serv. Comm'n,* 50 Haw. 169, 434 P.2d 312 (1967), and the "Order Adopting New Procedures for the Motions Calendar of the Circuit Court of the First Circuit" issued on May 11, 1983, and amended on December 22, 1983 (Order Adopting New Procedures), which provides in relevant part:

IT IS HEREBY ORDERED AS FOLLOWS:
1. The following motions will be given oral hearings, to-wit:
   a) motion to dismiss;
   b) motion for summary judgment;

\*   \*   \*

   d) all motions where the party to be noticed is appearing pro se.

We start our analysis by examining the Hawaii Rules of Civil Procedure (HRCP). HRCP Rule 56 does not specify that an oral hearing on a motion for summary judgment is mandatory. HRCP Rule 78 provides in pertinent part:

To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.

In *Jensen v. Pratt, supra,* our supreme court stated that Rule 78 "sets forth the exclusive procedure for dispensing with oral hearings" on summary judgment motions. *Id.* at 202, 491 P.2d at 548. Because there was "neither a rule nor an order generally dispensing with the requirement of oral hearings on motions for summary judgment[,]" the court held that the failure to hold an oral hearing was reversible error. *Id.* at 202-03, 491 P.2d at 548. Four years earlier, in *Clarke v. Civil Serv. Comm'n, supra,* the court had held that the trial court reversibly erred when it granted summary judgment

on its own motion without notice and without a hearing on the matter.[2]

Rules of the Circuit Courts of the State of Hawaii (RCC) Rule 8 reads in relevant part: "The court on its own motion may order any matter submitted on the briefs and/or affidavits, without oral argument." This sentence was incorporated into RCC Rule 8 by an amendment adopted by the supreme court on June 22, 1983 to be effective July 1, 1983. Thus, Rule 8 fills the void noted in *Jensen* and specifically allows the circuit court to consider motions, including those for summary judgment, without oral argument.

The Order Adopting New Procedures is an order issued by the administrative judge of the First Circuit Court. It does not and cannot abrogate RCC Rule 8 which has been adopted and amended by the supreme court. The Order Adopting New Procedures serves as a guideline for the First Circuit Court.

Here, pursuant to RCC Rule 8 the lower court entered its November 21, 1986 ex parte order that it would rule on the motion for summary judgment without oral hearing. The order, moreover, expressly provided for the submission of memoranda, affidavits, and other evidence by the parties within a stated period.

Accordingly, having discretionary authority which it exercised, the lower court did not err in deciding the motion for summary judgment without an oral hearing.

## II.

Wilder argues that since the lower court ruled on the summary judgment despite his request for additional time to complete discovery, there was "judicial error." We disagree.

The request appears as a footnote in Wilder's memorandum in opposition to Defendants' motion for summary judgment. It reads as follows:

> Plaintiff submits that ample evidence is contained herein to fully warrant denial of summary judgment in light of the ap-

---

[2] The federal courts generally hold that an oral hearing is not necessary on a motion for summary judgment and that the motion can be decided on written submissions. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: *Civil 2d* § 2720.1 (1983). *See, e.g., Allied Chem. Corp. v. Mackay,* 695 F.2d 854 (5th Cir. 1983).

parent genuine issues of material fact. If the Court, however, is inclined to grant summary judgment in this matter, plaintiff seeks under Rule 56(F) [sic], Hawaii Rules of Civil Procedure, additional time to complete discovery which has not been completed yet.

Record at 309.

HRCP Rule 56(f) provides that the court may refuse to grant summary judgment if the party opposing the motion submits affidavits setting forth the reasons why he cannot present by affidavit facts essential to justify his opposition. If the stated reasons are deemed sufficient, the court may grant a continuance of the motion to permit affidavits to be obtained, depositions to be taken, or other discovery to be had. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: *Civil 2d* § 2740 (1983). Although Wilder sought relief under HRCP Rule 56(f), he failed to submit to the lower court affidavits explaining why he could not present by affidavit facts essential to justify his opposition to Defendants' motion. Thus, his request was technically defective. *See Vlasaty v. Pacific Club,* 4 Haw. App. 556, 558-59, 670 P.2d 827, 830 (1983). *But see Crutchfield v. Hart,* 2 Haw. App. 250, 630 P.2d 124 (1981) (although plaintiff's request for additional time to conduct discovery was in the memorandum of law and not in an affidavit, summary judgment should not have been granted because the three-month period between the filing of the complaint and the filing of defendant's motion for summary judgment did not provide plaintiff with a reasonable time for discovery).

We need not rest our decision solely on Wilder's technical failure to invoke Rule 56(f) by means of an affidavit. Wilder's request would still be inadequate even if it had been stated in the form of an affidavit. Wilder failed to give any reason why he had been unable to conduct adequate discovery during the period of 29 months since September 10, 1984, when he filed the original complaint. *See Premier Elec. Constr. Co. v. International Bhd. of Elec. Workers,* 627 F. Supp. 957, 967 (N.D. Ill. 1985). Also, the "request must demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact.' " *United States v. $5,644,540.00 in U. S. Currency,* 799 F.2d 1357, 1363 (9th Cir.

1986) (quoting *Securities & Exch. Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir. 1980)) (citations omitted), *cert. denied,* 449 U.S. 1082, 101 S. Ct. 866, 66 L. Ed. 2d 806 (1981). The mere recitation of the Rule 56(f) language "is not enough to invoke the court's discretion under Rule 56(f)." *Premier Elec. Constr. Co.,* 627 F. Supp. at 967.

Moreover, Wilder made no firm request for a continuance of the motion for the purpose of completion of discovery. Wilder filed an affidavit consisting of 30 paragraphs on nine pages and 21 exhibits[3] in opposing Defendants' motion for summary judgment. He was confident that his detailed affidavit and exhibits would raise genuine issues of material fact and defeat Defendants' motion. As an afterthought and safeguard he wanted a continuance for additional discovery only if the court was inclined to grant Defendants' motion. This was not a proper Rule 56(f) request even if it had been in a form of an affidavit, rather than a footnote to his memorandum.

Under these circumstances, the lower court did not abuse its discretion in not postponing its ruling on the motion for summary judgment.

### III.

Wilder claims that because the affidavits and exhibits in the case reveal numerous disputed factual issues, the granting of summary judgment was improper. However, the existence of disputed factual issues in the record itself is not dispositive of a pending motion for summary judgment.

HRCP Rule 56(c) requires that the disputed fact be *material.* A material fact is one which, if proved, "would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted). Also, "a factual issue that is not necessary to the decision is not material . . . and a motion for summary judgment may be granted

---

[3] The affidavit referred to Exhibits A through M appended to the original complaint filed on September 10, 1984, and Exhibits N through U appended to the affidavit.

without regard to whether it is in dispute." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: *Civil 2d* § 2725 at 95 (1983).

Applying the foregoing precepts in the instant case, we hold that there were no genuine issues of material fact and Defendants were entitled to a judgment as a matter of law.

### A.

This is a case where a state prison inmate relies on the due process clause of the Hawaii Constitution, rather than the due process clause of the Fourteenth Amendment[4] to the United States Constitution. The two due process clauses are virtually identical in language. Thus, just as the supreme court followed federal case law in the disposition of a prison inmate's claim of due process rights under the Hawaii Constitution in *Lono v. Ariyoshi*, 63 Haw. 138, 621 P.2d 976 (1981), we will follow federal case law in determining Wilder's due process of law claim.

There being "no iron curtain drawn between the Constitution and the prisons of this country[,]" *Wolff v. McDonnell*, 418 U.S. 539, 555-56, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935, 950 (1974), prisoners do enjoy constitutional protections, although "subject to restrictions imposed by the nature" of the penal system. *Id.* at 556, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951. Prisoners do retain the procedural due process right not to be deprived of a liberty interest without reasonable notice and a meaningful opportunity to be heard. *Vitek v. Jones*, 445 U.S. 480, 488, 100 S. Ct. 1254, 1261, 63 L. Ed. 2d 552, 562 (1980); *Meachum v. Fano*, 427 U.S. 215, 223, 96 S. Ct. 2532, 2538, 49 L. Ed. 2d 451, 458 (1976). However, they "retain only a narrow range of protected liberty interests[,]" *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675, 685 (1983), and the adequacy of the procedural protection is "flexible and variable dependent upon the particular situation being examined." *Id.* at 472, 103 S. Ct. at 871, 74 L. Ed. 2d at 688.

---

[4] The Fourteenth Amendment to the United States Constitution provides in relevant part:

No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]

Wilder contends that he has a liberty interest in remaining in the general prison population and he must be accorded procedural due process before he can be placed and retained in administrative segregation.[5] However, the due process clause in itself does not give a prisoner this right because "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468, 103 S. Ct. at 870, 74 L. Ed. 2d at 686. *See also Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986), *cert. denied*, ____ U.S. ____, 107 S. Ct. 2462, 95 L. Ed. 2d 871 (1987).

Citing *Hewitt*, Wilder further contends that he has a liberty interest in remaining free from administrative segregation created by the rules applicable to the Corrections Division of the Department of Social Services and Housing. The relevant rules dealing with administrative segregation and transfer provide as follows:

§ 17-201-22 *General Provisions*. The facility administrator or a designated representative may administratively segregate or transfer, within or without the facility, any inmate or ward under any of the following circumstances:

    (1) Whenever the facility administrator or a designated representative determines that an inmate or ward has committed or threatens to commit a serious infraction.

    (2) Whenever the facility administrator or a designated representative, considering all the information available, including confidential or reliable heresay [sic] sources, determines that there is reasonable cause to believe that the inmate or ward is a threat to:

    (A) Life or limb;

    (B) The security or good government of the facility;

    (C) The community.

    (3) Whenever any similarly justifiable reasons exists [sic].

\*    \*    \*

§ 17-201-24 *Procedures*. Administrative segregation is nonpunitive in nature and may be imposed for an indeterminate

---

[5] In his affidavit Wilder stated that he was placed in administrative segregation by being transferred to "the holding unit segregation area" on February 7, 1984, and was retained there until August 8, 1984. Record at 340, 342.

period until such time as the facility administrator or a designated representative determines that the reason for such confinement no longer exists. Within a reasonable period after the initial imposition of administrative segregation, the inmate or ward should be given a written summary of the reasons for administrative segregation and an opportunity to present evidence in defense before the administrator or designated representative when permitting the inmate or ward to do so will not be unduly hazardous to institutional safety or correctional goals. The facility administrator should review the inmate's or ward's confinement at least once every thirty days.

Wilder concludes that these rules create a protected liberty interest in remaining in the general prison population and that Defendants were precluded from placing and retaining him in administrative segregation unless the "substantive predicates" in § 17-201-22 had been met. *Hewitt* does not support Wilder's contention and conclusion.

A state's creation of "a careful procedural structure to regulate the use of administrative segregation" in itself does not indicate "the existence of a protected interest." *Hewitt,* 459 U.S. at 471, 103 S. Ct. at 871, 741 L. Ed. 2d at 688. The crucial question is whether the rules place "substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S. Ct. 1741, 1747, 75 L. Ed. 2d 813, 823 (1983).

In *Hewitt,* the Pennsylvania prison regulations contained specific substantive predicates for administrative segregation.[6] As the Third Circuit Court of Appeals' analysis of the *Hewitt* majority opinion indicates:

Instead of focusing solely on the substantive predicates, the [Supreme] Court looked to both the state's use of "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed," *and* the provision "that administrative segregation will not occur absent specified substantive predicates," as the basis for its conclusion

---

[6] The specific substantive predicates under the Pennsylvania regulations were a determination "that there is a threat of a serious disturbance, or a serious threat to the individual or others." *Hewitt v. Helms,* 459 U.S. 460, 470-71 n.6, 103 S. Ct. 864, 871 n.6, 74 L. Ed. 2d 675, 687 n.6 (1983).

that the regulations sufficiently constrained official discretion to create a liberty interest. [*Hewitt,* 459 U.S.] at 471-72, 103 S. Ct. at 871[.]

*Stephany v. Wagner,* 835 F.2d 497, 501 (3d Cir. 1987), *reh'g and reh'g in banc denied* (1988) (emphasis in original) (citations omitted). Thus, in essence, the *Hewitt* majority found that specific mandatory language created the liberty interest.

In applying the *Hewitt* principles, we first find that the substantive predicates in § 17-201-22 give the officials more leeway in the "similarly justifiable reasons" predicate than those in the Pennsylvania regulations. We then find that § 17-201-24 expressly provides that administrative segregation is "nonpunitive in nature" and contains no "unmistakably mandatory" words such as "shall," "will," or "must" requiring specific procedures. As characterized in *Hewitt,* the relevant rules involved here constitute "procedural guidelines" and do not create a protected liberty interest.

Consequently, regarding Wilder's due process claim allegedly arising from the placement and retention of him in administrative segregation, there was no genuine issue of material fact and Defendants were entitled to a judgment as a matter of law.

B.

On May 23, 1984, Maxson, as the "acting program control administrator," issued a directive imposing certain restrictions[7] for the holding unit where Wilder was temporarily housed. Wilder contends that the May 23, 1984 directive constituted "rules" adopted in contravention of legal authority, thus violating his "right to due process and equal application of the law." This contention is without merit.

In 1984, Hawaii Revised Statutes (HRS) § 353-3 (1985)[8] and § 17-200-1 of the Department of Social Services and Housing's

---

[7] The May 23, 1984 directive for the holding unit, *inter alia,* set the lockup and out-of-cell recreation hours, visit time, permissible time in the shower, the number of books and magazines which may be borrowed from the library bookmobile, the time and ceiling amount for store purchases, and the time and limit on telephone calls, and banned smoking.

[8] Act 338, 1987 Haw. Sess. Laws 1096, which took effect on July 1, 1987, created a new Department of Corrections and transferred to it the responsibility for the

rules governed the adoption of rules relating to the Corrections Division. HRS § 353-3 (1985) provided in part as follows:

> The director of social services and housing shall have the entire government, control, and supervision of state correctional facilities except intake service centers and of the administration thereof. The director may make and from time to time alter or amend rules relating to the conduct and management of such facilities and the care, control, treatment, furlough and discipline of persons committed to the director's care, which rules must be approved by the governor[.]

Section 17-200-1 read in part:

> Each individual facility may adopt rules governing its unique situation pursuant to chapter 353, subject to the approval of the director of the department of social services and housing and the governor. However, supersession of these rules shall be permitted only where necessary due to the unique characteristics of the facility.

In our view, the May 23, 1984 directive did not constitute "rules" which had to be adopted pursuant to the provisions of HRS § 353-3 (1985) or § 17-200-1. HRS § 353-3 (1985) applied to the governance of correctional facilities and their inmates on a statewide basis. Section 17-200-1, in turn, applied to rules relating to an "individual facility." HRS Chapter 353 (1985) contained no definition of the term "facility," but HRS § 353-1.1 (1985) provided for "a community correctional center for each of the counties,". HRS § 353-1.2 (1985) provided for the establishment of "a high security correctional facility,"[9] and HRS Chapter 352 (1985) dealt

---

administration and maintenance of all correctional facilities and services from the Department of Social Services and Housing. Act 338 repealed part I of Hawaii Revised Statutes (HRS) Chapter 353 in its entirety and substituted a new part I. Consequently, the old HRS § 353-3 was repealed. The new HRS § 353-2(b) (Supp. 1987) provides in part:

> The director [of corrections] may adopt, amend, or repeal rules pursuant to chapter 91, relating to the conduct and management of such facilities [all state correctional facilities] and the care, control, treatment, furlough, and discipline of persons committed to the director's care.

[9] Amended versions of HRS § 353-1.1 (1985) and HRS § 353-1.2 (1985) are, by virtue of Act 338, now HRS § 353-6 (Supp. 1987) and HRS § 353-7 (Supp. 1987), respectively. *See supra* note 8.

with the "Hawaii youth correctional facilities." Neither Chapter 352 nor Chapter 353 described a community correctional center holding unit as a "facility" and we hold that it was not a "facility" within the meaning of those statutes. Since § 17-200-1 applied only to rules governing a "facility," we conclude that its provisions did not apply to a directive adopted for a holding unit within a community correctional center.

The May 23, 1984 directive adopted for the holding unit within the OCCC did not require the director's or the governor's approval pursuant to HRS § 353-3 or § 17-200-1. Accordingly, Defendants were entitled to a judgment as a matter of law on Wilder's claim based on the May 23, 1984 directive.

## IV.

Based on this disposition of the appeal, we find it unnecessary to discuss the issue of qualified immunity.

We affirm the order granting summary judgment for Defendants.

*John P. Wilder,* plaintiff-appellant, pro se, on the briefs.

*Glenn S. Grayson,* Deputy Attorney General, on the brief for defendants-appellees.