**John ALLEN, Plaintiff,**

v.

**CITY AND COUNTY OF HONOLULU, et al., Defendants.**

**Civ. No. 90–00781 ACK.**

United States District Court, D. Hawaii.

Jan. 27, 1993.

John Allen, pro se.

Thomas D. Farrell, and Ronald B. Mun, Michael N. Tanoue, Deputy Corp. Counsel, City and County of Honolulu, Honolulu, HI, for defendants.

## ORDER ADOPTING IN PART AND MODIFYING IN PART MAGISTRATE'S FINDINGS AND RECOMMENDATIONS FILED OCTOBER 21, 1992 AND DECEMBER 3, 1992

. KAY, Chief Judge.

### I. INTRODUCTION

Plaintiff *pro se* John Allen ("Plaintiff"), an inmate at Halawa Correctional Facility ("HFC"), filed the instant civil rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff sues 27 named defendants, who include various officials of the State of Hawaii ("State Defendants"), the City and County of Honolulu and several of its officials ("City Defendants"), as well as two John or Jane Does. Plaintiff seeks declaratory, injunctive and monetary relief, alleging that the various Defendants violated his rights as secured by both the federal and state constitutions.

Both the State and City Defendants filed with the Magistrate motions for summary resolution of Plaintiff's Complaint. On October 21, the Magistrate filed a detailed and comprehensive findings and recommendation granting in part and denying in part Defendants' motions ("Recommendation"). In addition, the Magistrate asked the parties to make additional submissions on many of Plaintiff's claims. Neither Plaintiff nor the City Defendants object to any portion of the Magistrate's Recommendation. However, on October 29, 1992, this Court granted State Defendants' motion for an extension of time in which to file objections to the Recommendation.

On December 3, 1992, the Magistrate filed additional findings and recommendations granting in part and denying in part Defendant's motions. These findings and recommendations were based on the additional submissions requested by the Magistrate under the October 21 findings and recommendation. This creates the unusual situation of having two sets of findings and recommendations instead of one set encompassing the Magistrate's entire findings and recommendations on Defendants' summary judgment motion. None of the parties object to any portion of the Magistrate's December 3 Recommendation.

Although State Defendants "concur with the vast majority of the Magistrate's [October 21 Findings] and Recommendation and believe it is well reasoned and correctly states the facts and law," [1] they have filed objections to several discrete portions of the Recommendation. State Defendants assert that the Magistrate erroneously declined to grant summary judgment on four claims alleged in the Complaint. Defendants attribute error to the Magistrate's denial of summary judgment on the following claims alleged in Plaintiff's Complaint: (1) that State Defendants failed to protect Plaintiff from intimidation by his cell mate; (2) that State Defendants impermissibly forced Plaintiff to choose between law library time and outdoor

---

1. State Defendants' Objections at 18.

recreation; (3) that State Defendants filed "false reports" to Honolulu Police Department ("HPD") officers; and (4) that State Defendants deprived Plaintiff of his procedural due process rights. Plaintiff has not filed a response to the State Defendants objections.

The Court will not reiterate a summary of all the factual allegations appearing in Plaintiff's Complaint; the Magistrate has more than adequately done so in his Recommendation. The Court will, of course, discuss the facts necessary to resolve each of the State Defendants' specific objections.

## II. DISCUSSION

Although State Defendants moved the Magistrate for both judgment on the pleadings and summary judgment, they object only to the Magistrate's failure to grant summary judgment. Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The Court reviews the objected-to portions of the Recommendation *de novo.* Local Rule 404-2 ("A United States district judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.")

In addition to arguing that Plaintiff has failed to establish that State Defendants violated any of his federally protected rights as a matter of law, State Defendants further assert that they are entitled to qualified immunity.[2] Because State Defendants raise a qualified immunity argument with respect to three of the four rulings to which they object, the Court finds it appropriate to discuss the standard governing qualified immunity analysis at the outset.

## A. QUALIFIED IMMUNITY STANDARD

■ Government officials who perform discretionary functions are protected from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct.

2727, 2738, 73 L.Ed.2d 396 (1982). In order for a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The plaintiff "bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991).

## B. STATE DEFENDANTS' OBJECTIONS

### 1. Intimidation Claims.

■ The Magistrate discusses this claim at pages 35–36 of the Recommendation. Plaintiff asserts that his cell mate for a time, one Tuua, intimidated Plaintiff into giving Tuua the pork and beef from Plaintiff's meals and forced Plaintiff to sleep on a mattress on the floor of their cell. The Magistrate properly found that requiring an inmate to sleep on the floor, by itself, does not constitute a constitutional violation. Recommendation at 34 (citing *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.1985)). The Court finds that, in Hawaii, there is no constitutional difference between sleeping on a mattress placed on a concrete slab and sleeping on a mattress placed on a concrete floor. In addition, Plaintiff concedes that because of his religious convictions, he would not have eaten the beef or pork in his meal in any event. Complaint at ¶ 171.

■ It is undisputed that prison officials "are under an obligation to take reasonable measures to guarantee the safety of the inmates" they house. *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). However, under the allegations in the Complaint, Plaintiff's right to safety has not been violated. Plaintiff claims to have been intimidated into doing

---

**2.** *The Magistrate declined to rule on the qualified* immunity defense.

things which he would have done, or would have been required to have done, even in the absence of any intimidation. That is, Plaintiff gave up food which he would not have eaten and slept on a mattress on the floor which he or his cell mate would have had to do anyway. Even when accepting his allegations as true, Plaintiff's safety has not been compromised.

Nevertheless, the Magistrate denied summary judgment, reasoning that "Plaintiff should not have to endure intimidation." Recommendation at 35. The Court generally agrees with this proposition; however, that does not end the inquiry. Neither of the parties, nor the Magistrate, has cited any authority suggesting that intimidation or threats by inmates, which do not result in any actual injury to the plaintiff, state a constitutional violation. The Court has likewise been unable to find any such authority. The cases found by the Court, however, suggest that an inmate must prove that prison officials' deliberately indifferent actions resulted in a failure to protect inmates from *actual violence* by other inmates. *E.g.*, *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir.1991) ("an inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect him from the *violent actions* of other inmates may state a viable § 1983 cause of action); *Wilks v. Young*, 897 F.2d 896, 897–98 (7th Cir.1990) ("a prison official will be liable for failing to protect an inmate from *attacks* if that official acts with deliberate indifference." (internal quotation marks omitted)).

Because the Court has been unable to find any authority alluding to the right of an inmate to be free of intimidation by other inmates where the intimidation does not result in any actual injury, the Court is compelled to find that Plaintiff has failed to meet his burden of establishing a violation of "a clearly established right." As a consequence, State Defendants are entitled to qualified immunity as a matter of law. Therefore, the Court grants State Defendants' motion for summary judgment on this claim.

*2. Outdoor Recreation Versus Law Library.*

■ On pages 37–39 of the Recommendation, the Magistrate denied State Defen-

dants' motion for summary judgment on Plaintiff's claim that he was subjected to cruel and unusual punishment by virtue of not being allowed to visit the law library and have outdoor recreation on the same day. The Magistrate characterized Plaintiff's claim as asserting that State Defendants (specifically Defendant Salgado) forced Plaintiff to choose between law library time and outdoor recreation. State Defendants do not dispute this characterization. Objections at 5.

■ Prisoners have a constitutional right of access to the courts, which includes adequate law library time. *See, Bounds v. Smith*, 430 U.S. 817, 827, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). This Court has held that Hawaii's policy of allowing inmates with filed cases six hours of law library time a week satisfies the minimum requirements of the constitution. *E.g.*, *Secord v. Hall*, Civ. No. 92–00262 ACK (D.Hawaii, filed Dec. 7, 1992); *Utu v. Falk*, Civ. No. 88–00577 HMF (D.Hawaii, filed Mar. 31, 1989).

■ Prisoners also have a distinct constitutional right to outdoor exercise. *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir.1979). In *Spain*, the Ninth Circuit affirmed the district court's order finding that "the denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment" and ordering prison officials to provide inmates with outdoor exercise of one hour per day, five days a week "unless inclement weather, unusual circumstances or disciplinary needs ma[ke] that *impossible*." *Id.* (emphasis supplied).

State Defendants argue that because Plaintiff was allowed out of his cell six hours a week to visit the law library, and could have elected to spend that time at outdoor recreation instead of going to the law library, he has failed to state a constitutional violation. In other words, State Defendants claim that they may constitutionally force an inmate to choose between two fundamental rights: law library time and outdoor recreation.

State Defendants' argument contravenes the language of *Spain* and defies logic. The *Spain* Court emphasized the significance of

outdoor recreation for inmates when it stated, "some form of regular outdoor exercise is *extremely important* to the psychological and physical well being of the inmates." *Id.* (emphasis supplied). Recent Ninth Circuit cases reaffirm the principle enunciated in *Spain. E.g., McKinney v. Anderson,* 924 F.2d 1500, 1507 (9th Cir.1991) ("In *Spain,* we held that denying prisoners fresh air and opportunities for regular outdoor exercise violates the Eighth Amendment.")

The cases indicate that both the right of access to the courts and the right to outdoor exercise are important ones. To sanction the policy of forcing a prisoner to choose between two important, indeed fundamental, rights is tantamount to denying the prisoner one of the rights. For example, few would question the unconstitutionality of requiring a prisoner to forego meals on a day when he visits the prison infirmary. The fact that a prison official affords an inmate one privilege secured by the constitution does not give that official license to deny the inmate other constitutionally protected rights.

State Defendants also argue, rather weakly, that simply by virtue of the fact that Plaintiff was in the Special Holding Unit ("SHU"), they could force him to make the choice between law library time and outdoor exercise time. This argument lacks merit under *Spain.* While *Spain* did recognize that penological considerations may justify some restrictions on outdoor exercise, such circumstances are limited. *Spain* limited such considerations to "unusual circumstances" or "disciplinary needs" that make outdoor exercise *"impossible." Spain,* 600 F.2d at 199; *accord Mitchell v. Rice,* 954 F.2d 187, 192 (4th Cir.1992) (The one court to specifically address justifications for exercise restrictions limited them to 'unusual circumstances' or circumstances where 'disciplinary needs made [outdoor exercise] *impossible.'* " (quoting *Spain;* emphasis by the *Mitchell* Court)). Indeed, in *Spain,* the Court explicitly rejected the state's argument that restrictions on outdoor exercise were justified to protect prison staff and inmates from violent attacks, to insure against escape, and to minimize costs or inconvenience to the prison. *Spain,* 600 F.2d at 200. The Court reasoned that "[t]hese concerns justify not permitting plaintiffs to mingle with the general prison population but do not explain why other arrangements [for outdoor exercise] were not made." *Id.*

In this case, State Defendants have failed to demonstrate that providing Plaintiff with outdoor exercise and law library time posed any security or administrative problems. Their assertion that Plaintiff was in the SHU simply does not carry the day.

The Court notes that the prison regulations allow prison officials to transfer inmates to SHU for other than disciplinary reasons. *See,* Title 17, Administrative Rules of the Corrections Division, § 17–201–22, *et seq.* (Inmates may be administratively segregated or placed in protective custody; such segregation is "nonpunitive in nature."); *see also,* Sandin Declaration (presented to the Magistrate as Exhibit N) (acknowledging that not all inmates housed in the SHU are there for disciplinary reasons). State Defendants do not claim that Plaintiff was being punished but merely assert that Plaintiff happened to be in the SHU. They do not allege that he presented a danger to others or to the security of the facility and offer *no explanation* why Plaintiff could not be given outdoor recreation and library time. Moreover, State Defendants' own evidence suggests that there are *not* administrative problems with providing inmates in SHU with outdoor exercise. *See,* Sandin Declaration at ¶ 9 (stating that corrections officers routinely "escort [SHU inmates] to the law library, infirmary and recreation yard (for one hour recreation per weekday)").

Thus, the Court finds that State Defendants have not made the requisite showing on summary judgment and under *Spain* to justify their denial of Plaintiff's constitutional right to fresh air and outdoor exercise. In addition, the Court finds that both the right of access to the courts through adequate law library time and the right to outdoor exercise were clearly established at the times relevant herein. The cases discussing these rights in no way suggest that these are "either/or" rights. To the contrary, the two rights are wholly independent and emanate from different constitutional provisions: right of court access from the 14th Amendment, *see Bounds, supra,* and right to outdoor exercise

from the Eighth Amendment, *see Spain, supra.*

Finally, State Defendants maintain that they are entitled to qualified immunity because in 1989 there was no clearly established right for temporarily segregated prisoners to have both library and out-of-cell exercise periods. Objections at 8. State Defendants base this argument on the fact that the *Spain* decision explicitly mandated outdoor exercise only for inmates who had been imprisoned without exercise rights for a period of years; State Defendants assert *Spain* did not extend outdoor exercise rights to temporarily segregated inmates. Objections at 8. However, subsequent to *Spain,* numerous courts have held that constitutional standards of decency may be violated by confining inmates, without exercise, for extended periods of time defined in terms of days and months instead of years. *See, e.g., Ruiz v. Estelle,* 679 F.2d 1115, 1151–52 (5th Cir.1982) (upholding a district court decree allowing all prisoners one hour of exercise a day if confined in administrative segregation for more than 3 consecutive days); *Davenport v. DeRobertis,* 844 F.2d 1310, 1315 (7th Cir.1988) (upholding minimum exercise periods for all prisoners confined in segregation for 90 or more consecutive days); *Mitchell v. Rice,* 954 F.2d 187, 192 (4th Cir.1992) (holding that confinement for periods of seven and eleven months without exercise may violate constitutional standards of decency). In the instant case, Plaintiff was held in special holding (in both administrative and disciplinary segregation) for almost nine months between January and September 1989.

Although the Ninth Circuit has not expressly extended exercise rights to temporarily segregated inmates, it has held that "a court should look at all available decisional law including decisions of state courts, other circuits, and district courts to determine whether [a] right was clearly established." *Ward v. County of San Diego,* 791 F.2d 1329, 1332 (9th Cir.1986); *see Kirkpatrick v. City of Los Angeles,* 803 F.2d 485, 490 (9th Cir. 1986). The court further stated that the likelihood that the Ninth Circuit or the Supreme Court would adopt the analysis is also part of the inquiry. *Id.*

In turning to the instant inquiry, *Ruiz* and the above cited cases support a conclusion that a clearly established right to exercise for temporarily segregated inmates presently exists and existed in 1989. In the *Spain* decision, although factually limited to long term segregation, the Ninth Circuit recognizes a constitutional right to outdoor exercise and affirms the importance of outdoor exercise for the psychological and physical well-being of inmates. *Spain,* 600 F.2d at 199. This fact, when combined with the pervasive recognition by other courts of exercise rights for temporarily segregated prisoners, leads to the conclusion that the Ninth Circuit would adopt the analysis of the other circuit courts.[3]

■ In summary, it is necessary to determine from the facts of each case if an inmate's right to outdoor exercise has been violated or if a valid qualified immunity defense exists. *See Ruiz,* 679 F.2d at 1152; *Rice,* 954 F.2d at 193. If "the record in [a] case does not adequately address all issues necessary to determine whether prison officials violated clearly established law, [a court] cannot grant qualified immunity...." *Rice,* 954 F.2d at 193. At this time, State Defendants in the case at bar have not set forth facts that would entitle them to qualified immunity. However, State Defendants may have leave to file such a motion.

Accordingly, the Court adopts the Magistrate's recommendation that summary judgment on this issue be denied.

*3. Filing of False Charges with the HPD.*

■ Plaintiff alleges that on April 6, 1989, he had a physical confrontation with several State Defendants which resulted in State Defendants filing with the HPD a

---

**3.** Additionally, the State Defendants' argument that no clearly established right to outdoor exercise for temporarily segregated inmates existed in 1989 is unpersuasive in light of the fact that Halawa inmate guidelines provided for outdoor exercise. Administrative Segregation guidelines that were issued to administratively segregated inmates in 1989 state that inmates "shall be allowed to have five 60–minute indoor or outdoor exercise periods per week as scheduled unless compelling security or safety reasons dictate otherwise." Administrative Segregation Unit Inmate Guidelines ¶ 45.

charge of assault on a corrections officer against Plaintiff. On page 44 of the Recommendation, the Magistrate correctly found that what actually occurred in this incident is in dispute. However, the Magistrate concluded that because the facts of the underlying incident are in dispute, summary judgment is not appropriate on Plaintiff's claim against State Defendants for filing a false criminal charge.

The Court has reviewed State Defendants' motion for summary judgment filed with the Magistrate. Although they successfully argued that Plaintiff may not pursue his claim that State Defendants filed false *administrative* charges against him, the State Defendants never moved for summary judgment on Plaintiff's claim that they filed false *criminal* charges against him. These two claims are distinctly plead in Plaintiff's complaint. *Compare,* Complaint at p. 35, ¶ 20 ("Retaliation through imposition of false criminal charge of assault on a Correctional Officer"), *with,* Complaint at p. 35, ¶ 21 ("Retaliation through imposition of false or defective institutional misconduct charge and Adjustment hearing"). Although State Defendants now argue by analogy that the cases applicable to false administrative charges also apply to false criminal charges, these claims should be raised in a summary judgment motion before the Magistrate, allowing both parties an opportunity to adequately address this issue. It is inappropriate for State Defendants to object to a portion of the Recommendation when they never briefed the issue discussed therein; it would be equally inappropriate for this Court to rule on the issue at this stage of the proceedings. Accordingly, the Court adopts the Magistrate's recommendation to deny summary judgment on this claim at this time. However, State Defendants may file a supplemental summary judgment motion on this claim.[4]

### 4. Due Process Claims.

On pages 46–47 of the Recommendation, the Magistrate found that Plaintiff had a due process liberty interest in an adjustment committee hearing, and that State Defendants failed to comply with the due process clause's minimum requirements. During

1989, Plaintiff spent time in the SHU under both the disciplinary segregation rules and the administrative segregation rules. However, the Magistrate does not distinguish between these two forms of segregation.

### a. Administrative Segregation.

 To the extent that Plaintiff's Complaint is based upon a claim that he has a protected liberty interest in the administrative segregation procedures, summary judgment must be granted in favor of State Defendants. Although in *Hatori v. Haga,* 751 F.Supp. 1401 (D.Hawaii 1989), this Court previously held that the administrative segregation procedures create a liberty interest, the Court has since decided that it will no longer follow *Hatori.* In an unpublished decision, *Secord v. Hall,* Civ. No. 92–00507 ACK (D.Hawaii, Oct. 22, 1992), this Court stated,

> In light of the Ninth Circuit's decision in *Dix v. County of Shasta,* 963 F.2d 1296 (9th Cir.1992), as well as the United States Supreme Court's decision in *Kentucky Dep't of Corrections v. Thompson,* [490 U.S. 454] 109 S.Ct. 1904 [104 L.Ed.2d 506] (1989) and the Hawaii Intermediate Court of Appeals decision in *Wilder v. Tanouye,* [7 Haw.App. 247] 753 [P].2d 816 (Haw.Ct. App.1988), this Court will no longer follow the decision in *Hattori [Hatori] v. Haga.* These cases have established that the Hawaii regulations pertaining to administrative segregation do not give rise to a protected liberty interest.

*Id.* at 3–4.

 Indeed, it is now well established that in order for state law to create federally enforceable liberty interests, the state law must contain two elements. *See, Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). The Ninth Circuit explained these elements in a recently published opinion.

> First, the [state] law must contain "substantive predicates" governing an official's decision regarding a matter directly related to the individual. [*Thompson,* 490 U.S.

---

4. The Court notes because the Magistrate declined to rule on many issues and asked for

further submissions, this procedure will not be a hardship to either party.

at 461, 109 S.Ct. at 1909]. This means that the law in question must provide more than merely procedure; it must protect some substantive end. The state "may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." [*Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) (footnote omitted)]. Second, the state law must employ "explicitly mandatory language" specifying the outcome that *must* be reached upon a finding that the substantive predicates have been met. [Citing *Thompson*, 490 U.S. at 462, 109 S.Ct. at 1910].

*Dix v. County of Shasta*, 963 F.2d 1296, 1299 (9th Cir.1992) (emphasis in original).

Although the language of the regulations applicable in this case establish "substantive predicates" to guide the decisionmaker, they do not contain the "explicitly mandatory language" required by the controlling case authority to create a liberty interest. Section 17–201–22 of the Inmate Handbook governs when prison officials may administratively segregate a prisoner. It provides:

*General provisions.* The facility or administrator or a designated representative may administratively segregate or transfer, within or without the facility, any inmate or ward under any of the following circumstances:

(1) Whenever the facility administrator or a designated representative. determines that an inmate or ward has committed or threatens to commit a serious infraction.

(2) Whenever the facility administrator or a designated representative, considering all the information available, including confidential or reliable hearsay sources, determines that there is reasonable cause to believe that the inmate or ward is a threat to:

(A) Life or limb;

(B) The security or good government of the facility; [or]

(C) The community.

(3) Whenever any similar justifiable reasons exist.

Inmate Handbook § 17–201–22.

In turn, § 17–201–24 of the Inmate Handbook discusses the procedures involved in imposing administrative segregation:

*Procedures.* Administrative segregation is nonpunitive in nature and *may* be imposed for an indeterminate period until such time as the facility administrator or a designated representative determines that the reason for such confinement no longer exists. Within a reasonable period after the initial imposition of administrative segregation, the inmate or ward *should* be given a written summary of the reasons for administrative segregation and an opportunity to present evidence in defense before the administrator or designated representative when permitting the inmate or ward to do so would not be unduly hazardous to institutional safety or correctional goals. The facility administrator *should* review the inmate's or wards confinement at least once every thirty days.

Inmate Handbook § 17–201–24 (emphasis supplied).

In *Wilder v. Tanouye*, 7 Haw.App. 247, 753 P.2d 816 (1988), the Intermediate Court of Appeals held that the administrative segregation portion of the Inmate Handbook does not contain "unmistakably mandatory language." [5] The Supreme Court has suggested that federal courts should defer to state court interpretations of their own prison regulations. *See, Olim v. Wakinekona*, 461 U.S. 238, 250 n. 10, 103 S.Ct. 1741, 1748 n. 10, 75 L.Ed.2d 813 (1983).

Nevertheless, after an independent review of the applicable regulations in the Inmate Handbook, this Court concurs with the holding of the *Wilder* Court. While § 17–201–22 does afford prison officials significant leeway in placing inmates in administrative segregation, that regulation "do[es] provide certain 'substantive predicates' to guide the decisionmaker." *See, Thompson*, 490 U.S. at 462,

---

**5.** The *Wilder* Court also found that § 17–201–22 "gave the officials more leeway" than the regulations at issue in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); however, the Court stopped short of finding that the Hawaii regulation does not contain substantive predicates.

109 S.Ct. at 1910. Section 17–201–22 provides that prison officials "may" administratively segregate a prisoner when certain conditions obtain. The regulation lists criteria to guide the prison officials in making the decision whether to segregate an inmate. These criteria include whether the inmate has committed or threatens to commit a serious infraction, and whether he is a threat to other inmates, the good management of the facility, or the community. Although the regulation contains a catch-all provision, *see*, 17–201–22(3), that provision is limited to "*similar justifiable*" reasons. Thus, while prison officials do retain a substantial amount of discretion, that discretion should be exercised in accordance with the criteria set out in the regulation. The Court finds that § 17–201–22 contains substantive predicates intended to guide the prison official's discretion in deciding whether to administratively segregate an inmate.

The regulations, however, lack "explicitly mandatory language" specifying an outcome that must be reached if the guidelines of § 17–201–22 are met. To the contrary, the procedures state that a prison official "may" order administrative segregation if he or she finds that the criteria have been satisfied. In addition, the "procedures" section of the regulation, § 17–201–24, strengthens the conclusion that the regulation fails to mandate a particular course of action by prison officials. Section 17–201–24 does not contain any mandatory language, but instead provides that administrative segregation "may be" imposed for any length of time that the prison official sees fit. Moreover, the procedures only suggest that inmates "should be" given a written summary of reason for the decision and that decision "should" be reviewed once a month. The plain import of this language is that prison officials "should" or "may," but need not, utilize certain procedures. Both §§ 17–201–22 and –24 are utterly devoid of the explicitly mandatory language required to create a liberty interest. That is, the regulation "stop[s] short of *requiring* that a particular result is to be reached upon a finding that the substantive predicates are met." *Thompson*, 490 U.S. at 464, 109 S.Ct. at 1910 (emphasis supplied).

Accordingly, to the extent that Plaintiff seeks to recover from the State Defendants as a result of being placed in administrative segregation without a hearing, summary judgment in favor of State Defendants is appropriate.

b. Disciplinary Segregation.

■ While the State of Hawaii has not created a protected liberty interest in the procedures of administrative segregation, it has done so in regards to disciplinary segregation. *Aiello v. Shimoda*, Civ. No. 87–00224 ACK (D. Hawaii Apr. 3, 1987). In a recently published decision from this district, the Court followed the reasoning of *Aiello* and found that "there is no question that Hawaii's administrative regulations governing the conduct of a disciplinary hearing are mandatory." *Mujahid v. Apao*, 795 F.Supp. 1020, 1024 (D.Hawaii 1992). In making this determination, the Court cited to the repeated use of the word "shall" in the Administrative Rules applicable to disciplinary hearings, *i.e.*, § 17–201–16(a), –16(b), and –18(c). *Id.* In addition, the Court found that, "[w]ithout question, the Adjustment Committee could not ... impose the sanction or punishment of disciplinary segregation absent a factual finding of misconduct." *Id.* at 1023 (citing to Administrative Rule § 17–201–19(a)). This fact, the Court found, establishes that the Adjustment Committee does not have the discretion to impose sanctions wantonly, but rather its actions must be based upon substantive predicates. *Id.* Thus, the Court finds that Plaintiff had a protected liberty interest in the adjustment committee hearing process.

■ The inquiry, however, does not end with this finding. The Magistrate found that the Adjustment Committee had found Plaintiff guilty of misconduct and sentenced him to sixty days in disciplinary segregation. However, two days after Plaintiff's disciplinary segregation "sentence" expired, State Defendants reversed its previous decision and ordered a new hearing. Plaintiff claimed, and the Magistrate agreed, that because he was never afforded the new hearing, Plaintiff's due process rights were violated.

The Magistrate failed to recognize the precise interest at stake in a claim premised upon denial of due process. Plaintiff's com-

plaint with the process appears to be that the Adjustment Committee came to the wrong conclusion, *i.e.*, that Plaintiff violated the institutional rules. However, all that is protected by the (procedural) due process clause is the right to a constitutionally adequate hearing with the requisite procedural safeguards. In this case, Plaintiff has already served the time on his disciplinary segregation sentence and was afforded a hearing prior to serving that sentence. Plaintiff received all the process he was due prior to being placed in disciplinary segregation. Because he was not placed in disciplinary segregation after the State Defendants reversed their previous decision, he was not entitled to an additional hearing and Plaintiff can not claim to have been denied due process. Moreover, Plaintiff does not claim that the initial Adjustment Committee hearing was procedurally defective, and thus, is not entitled to relief.

Accordingly, to the extent that Plaintiff claims that he was denied a due process right to a hearing in conjunction with his being placed under disciplinary segregation, summary judgment is warranted.

### III. CONCLUSION

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 404–2, the Court hereby adopts those portions of the Magistrate's October 21 and December 3 findings and recommendation to which no party has objected. As to the portions of the findings and recommendation objected to by the State Defendants, the Court, based upon the foregoing discussion, hereby modifies the findings and recommendation as follows:

(1) Summary judgment is granted on Plaintiff's claim that State Defendants failed to protect him from the intimidation of his cell mate.

(2) Summary judgment on Plaintiff's claim that State Defendants filed false criminal charges with the HPD is not warranted at this time. However, State Defendants are granted leave to file a supplemental motion for summary judgment with the Magistrate on this claim.

(3) Summary judgment is granted on Plaintiff's claims that he was denied proce-

dural due process in connection with the Adjustment Committee hearings.

Finally, the Court adopts the Magistrate's findings and recommendation to deny summary judgment on Plaintiff's claim that he was forced to choose between law library time and outdoor recreation.

IT IS SO ORDERED.